UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SIMON BERMAN,

                    Plaintiff,                    17cv2757 (JGK)

        - against -                               MEMORANDUM OPINION
                                                  AND ORDER
CAPTAIN WILLIAMS, ET AL.,

                    Defendants.

JOHN G. KOELTL, District Judge:

The plaintiff, Simon Berman, brought this pro se action against Correction Captains Williams and Agard, and Officers Octavio Perez, Brian Weise, Christopher Wong, Bobbitt, Wallace, Jones, and one John Doe defendant (collectively, the "defendants") asserting claims pursuant to 42 U.S.C. § 1983 for alleged violations of his federal civil rights. The plaintiff alleges claims for excessive force and denial of medical care. In a prior opinion, this Court dismissed all of the plaintiff's claims against Captain Agard. See Berman v. Perez, No. 17cv2757, 2018 WL 565269 (S.D.N.Y. Jan. 24, 2018). The remaining defendants now move for summary judgment pursuant to Federal Rule of Civil Procedure 56 dismissing the plaintiff's claims. The defendants' motion is unopposed.

                            I.

The standard for granting summary judgment is well established. "The Court shall grant summary judgment if the

movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d 1219, 1223 (2d Cir. 1994). "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." Gallo, 22 F.3d at 1224. The moving party bears the initial burden of "informing the district court of the basis for its motion" and identifying the matter that "it believes demonstrate[s] the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323. The substantive law governing the case will identify those facts that are material and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). Summary judgment is improper if there is any evidence in the record from

any source from which a reasonable inference could be drawn in favor of the nonmoving party. See Chambers v. TRM Copy Ctrs. Corp., 43 F.3d 29, 37 (2d Cir. 1994). If the moving party meets its burden, the nonmoving party must produce evidence in the record and "may not rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible." Ying Jing Gan v. City of New York, 996 F.2d 522, 532 (2d Cir. 1993).

Where, as here, a pro se litigant is involved, although the same standards for dismissal applies, a court should give the pro se litigant special latitude in responding to a summary judgment motion. See McPherson v. Coombe, 174 F.3d 276, 279 (2d Cir. 1999) (courts "read the pleadings of a pro se plaintiff liberally and interpret them 'to raise the strongest arguments that they suggest'" (quoting Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994))). In particular, the pro se party must be given express notice of the consequences of failing to respond appropriately to a motion for summary judgment. See McPherson, 174 F.3d at 281; Vital v. Interfaith Med. Ctr., 168 F.3d 615, 620-21 (2d Cir. 1999).

The defendants provided express notice of the consequences of a failure to respond to the plaintiff at Elmira Correctional Center, where the plaintiff is currently incarcerated. The Court has extended the plaintiff's deadline to respond to the

defendants' motion several times and informed the plaintiff that a failure to respond could result in the dismissal of his case. As of June 17, 2019, the most recent deadline to respond, the plaintiff has not filed any response, and the defendants' motion for summary judgment is therefore unopposed.

However, "[e]ven when a motion for summary judgment is unopposed, the district court is not relieved of its duty to decide whether the movant is entitled to judgment as a matter of law." Vt. Teddy Bear Co., Inc. v. 1-800 Beargram Co., 373 F.3d 241, 242 (2d Cir. 2004). The district court may not grant an unopposed motion for summary judgment "without first examining the moving party's submission to determine if it has met its burden of demonstrating that no material issue of fact remains for trial." Amaker v. Foley, 274 F.3d 677, 681 (2d Cir. 2001). "[I]n determining whether the moving party has met this burden of showing the absence of a genuine issue for trial, the district court may not rely solely on the statement of undisputed facts contained in the moving party's Rule 56.1 statement. It must be satisfied that the citation to evidence in the record supports the assertion." Vt. Teddy Bear, 373 F.3d at 244; see also McClenton v. Menifee, No. 05cv2844, 2009 WL 195764, at *2 (S.D.N.Y. Jan. 12, 2009).

**II.**

The following facts are undisputed unless otherwise indicated.

**A.**

On February 17, 2013, the plaintiff was admitted to the custody of the Department of Correction ("DOC") on bond of $1,500,000 or bail of $750,000. Defs.' 56.1 Stmt. ¶¶ 12-14. On March 5, 2015, the plaintiff pleaded guilty to several crimes, "including attempting to bribe a public servant with more than $10,000, and undertaking a variety of acts to further a narcotics distribution conspiracy." Id. ¶ 15. The plaintiff alleges that the defendants used excessive force on him on three separate dates in 2014.

The plaintiff claims he was first subjected to excessive force on April 16, 2014 but admits he "can't really remember" the events of the day in question. Id. ¶¶ 21, 25-28. The plaintiff believes the incident occurred while he was incarcerated in the Manhattan Detention Center ("MDC") and being transferred to solitary housing. Id. ¶¶ 25-26. Although he is unsure who started the altercation, the plaintiff claims that Officer Perez and possibly another corrections officer punched the plaintiff all over his body, kicked him, choked him, and slammed his head against the wall and the floor. Id. ¶¶ 23, 31-

35. The plaintiff claims he received serious injuries as a result of the alleged beating. Id. ¶ 38.

In contrast, the DOC "24 Hour Report," which documents all significant incidents occurring at the MDC -- including uses of excessive force -- made no mention of any use of force involving either the plaintiff or Officer Perez between 6:00 AM on April 16 and 6:00 AM on April 17, 2014. Id. ¶¶ 22-24. However, Captain Garel, who is not named as a defendant, documented a concern for the plaintiff's mental state on the day in question. Id. ¶¶ 40-41. Captain Garel wrote a referral form, which stated that the plaintiff had failed to take his psychiatric medication and expressed a loss of the will to live. Id. Captain Garel and another non-defendant officer escorted the plaintiff to see Cynthia Hill, a mental health professional. Id. ¶¶ 45-47. Ms. Hill's report from the session indicates that the plaintiff used the time to "vent his concerns" about being harassed by a housing area officer. Id. ¶ 48. During the session, the plaintiff neither mentioned nor showed signs of any physical injuries from the alleged use of force, even though the plaintiff admits the session occurred after the alleged use of force. See id. ¶¶ 38, 49, 51, 57.

The plaintiff claims that a second series of incidents occurred the following day, on April 17, 2014. The plaintiff was escorted to the "Intake Search Area" of the MDC to be strip searched on the way to solitary housing. Id. ¶¶ 59-60, 63. This is where the first alleged April 17 incident – the "Intake Search Area incident" – took place. Officers Wong, Weise, Jones, Bobbitt, Wallace, and Captain Williams were present at the Intake Search Area. Id. ¶ 68. The plaintiff refused to comply with orders that he remove his clothes and protested, "I'm not a stripper." Id. ¶¶ 72-75. After the plaintiff continued to refuse to remove his clothes, Captain Williams ordered that the plaintiff be handcuffed. Id. ¶ 78. When the plaintiff continued to resist, the defendant officers applied "upper body control holds" and fell to the floor trying to restrain the plaintiff. Id. ¶¶ 80-81. The plaintiff continued to resist even after his final article of clothing was removed and searched. Id. ¶ 83. Captain Williams warned the plaintiff that continued resistance would result in the use of mace, but the plaintiff continued to resist, and Captain Williams briefly sprayed the plaintiff's eyes. Id. ¶¶ 84-85. The plaintiff then struck Officer Wong in the face, causing Officer Wong's head to slam against a wall. Id. ¶¶ 86-87. Officer Jones and Captain Williams both came to

Officer Wong's aid by striking the plaintiff in the upper torso. Id. ¶¶ 88-89. Finally, Officer Weise was able to secure the plaintiff in handcuffs. Id. ¶ 90.

The Intake Search Area incident was partially documented by video security cameras. Id. ¶¶ 91-98. At first, the plaintiff complied with the officers' directions to remove his clothes and began removing his clothes for about forty seconds. Rosenkilde Decl. Ex. P, Video from Camera 191.32-MDC-INTK-SEARCH3, at 00:30-01:10. Then, the footage shows the six officers converging on the plaintiff, out of frame, seemingly because the plaintiff stopped complying with the officers' direction. Id. at 01:15. In the following minutes, the six officers appear to be struggling with the plaintiff out of frame. Id. at 01:15-10:30. During that time, the plaintiff remains out of frame, and during that time the six officers intermittently move in and out of frame, appearing to struggle with the plaintiff throughout. Id. The footage ultimately shows the plaintiff emerging back in to frame in handcuffs wearing only his boxers. Id. at 10:35. The footage then shows the plaintiff sitting in a chair just outside the intake search area for about one minute before leaping up, while still handcuffed, and running away. Id. at 11:45. Several officers and medical officials then tend to Officer Wong out of frame before eventually removing him about thirty minutes later on a gurney while Officer Wong has on a neck brace and sling.

Id. at 36:30. Officer Wong's medical records show that on April 17, 2014, he was brought to Bellevue Hospital Center, bounded and collared, and with perceived loss of consciousness, head trauma, right wrist pain, and left back pain. Defs.' 56.1 Stmt. ¶ 138.

The plaintiff denies having attacked any of the officers, including Officer Wong, who the plaintiff claims was faking his injuries. Id. ¶¶ 103-07. The plaintiff also alleges that he was punched over twenty times after the search was completed and that he received injuries to his entire body from the Intake Search Area incident. Id. ¶¶ 101-02, 108.

**2.**

Immediately following the incident, the plaintiff ran to the front of the Intake area, which is called the "Intake Non-search Area." Id. ¶ 110. This is where the second alleged use of force on April 17, 2014 took place.

The plaintiff threatened to spit on a non-defendant captain. Id. ¶ 111. In response to this threat, several non-defendant officers, none of whom were involved in the previous uses of force, pushed the plaintiff up against the wall. Id. ¶¶ 112-15, 117. These new officers immediately escorted the plaintiff to the clinic to receive medical treatment for his injuries. Id. ¶¶ 118-19. The plaintiff alleges that, on the way to the clinic, the non-defendant officers threw him to the

floor, stepped on his foot, and held him in a painful position with his face pressed against the floor. Id.

At the clinic, Dr. Landis L. Barnes diagnosed the plaintiff with "avulsions and abrasions, a cervical sprain/strain, thoracic sprain/strain and lumbar sprain." Id. ¶ 125. The plaintiff's x-rays showed no sign of fractures. Id. ¶ 127. Photographs were also taken on April 17, 2014 of the plaintiff's injuries. Rosenkilde Decl. Ex. O.

### 3.

The plaintiff alleges yet another use of force by the probe team officers while he was at the clinic. The plaintiff alleges that during this third April 17, 2014 use of force, either Officer Perez or "Francois," who is not a named defendant, attempted to sodomize him; but the plaintiff was unable to describe the probe team officer who allegedly attempted to sodomized him. Id. ¶¶ 130, 132. According to a report generated by a subsequent investigation, none of the named defendants were present at the clinic when the alleged use of force took place. Id. ¶¶ 129, 133.

As a result of his conduct, the plaintiff was indicted for, and later pleaded guilty to, assaulting defendant Officers Jones, Wong, Wallace, and Weise. Id. ¶¶ 137, 139-40. In doing so, the plaintiff admitted to physically injuring the defendants, including Officer Wong, who lost consciousness and

was transported to a hospital. Id. ¶¶ 139, 141. An investigation of the April 17, 2014 incidents conducted by the DOC Intelligence Division exonerated the prison staff, including the defendant officers, from any wrongdoing. Id. ¶¶ 142-44. The investigation included a review of video surveillance, plaintiff's medical records, and staff reports. Id. ¶ 143.

### C.

The final instance of alleged excessive force occurred on June 9, 2014. While incarcerated at Rikers' Island, the plaintiff alleges that he was subjected to excessive force by terminated defendant Captain Agard and one or two unknown officers. Id. ¶¶ 147-49; Rosenkilde Decl. Ex. H at 153. Neither of these two unknown officers were named as defendants in this case.[1] An "Injury to Inmate Report" generated after the incident indicated that the plaintiff was in a "stable condition," "ha[d] no complaint," and had "no visible injuries." Defs.' 56.1 Stmt. ¶ 156 (quotation marks omitted).

---

[1]    The plaintiff described the unknown officers in such a way that rules out either of the unknown officers being Officer Perez. The plaintiff described Officer Perez as Spanish, weighing over 200 pounds, "chubby," and having "almost like a bald head" and sporting facial hear consisting of a "little scruff or maybe like a low." Defs.' 56.1 Stmt. ¶ 152. In contrast, he described the unknown officers as both weighing around 180 pounds, each with a medium build. Id. ¶¶ 150-51. Moreover, the plaintiff does not allege in his amended complaint that Officer Perez was involved in the June 9, 2014 incident. Other than Officer Perez, the plaintiff acknowledges that none of the other remaining defendants were involved in the June 9, 2014 incident. Id. ¶ 154.

## III.

The remaining defendants move for summary judgment on the claims of excessive force and denial of medical care. The plaintiff has failed to respond to the defendants' motion. For the reasons stated below, the defendants' motion is **granted.**

### A.

The defendants argue that the plaintiff's excessive force claims relating to the June 9, 2014 incident and the two April 17, 2014 incidents other than the Intake Search Area incident should be dismissed for lack of personal involvement.

To state a claim for a violation of § 1983, a plaintiff must plead the personal involvement of each defendant. That is, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009); see also Floyd v. Bailey, No. 10cv7794, 2013 WL 929376, at *7 (S.D.N.Y. Mar. 12, 2013). "There is no respondeat superior liability in § 1983 cases." Green v. Bauvi, 46 F.3d 189, 194 (2d Cir. 1995) (citing Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978)).

In this case, the plaintiff does not allege that any of the named defendants participated in his alleged beating on June 9, 2014. The plaintiff explicitly denied that Captain Williams and Officers Weise, Wong, Bobbitt, Wallace, and Jones were involved.

12

Rosenkilde Decl. Ex. H at 164. Moreover, the plaintiff does not allege in his complaint that Officer Perez was involved. The only named party whom the plaintiff alleges was involved in the June 9, 2014 incident is Captain Agard. But this Court has already dismissed the plaintiff's claims against Captain Agard. See Berman, 2018 WL 565269 at *4.

Similarly, the plaintiff does not allege that any of the named defendants committed any of the alleged acts of excessive force that occurred on April 17, 2014 after the Intake Search Area incident.[2] Therefore, the defendants' motion for summary judgment is **granted** with respect to the plaintiff's excessive force claims regarding the June 9, 2014 incident and the two April 17, 2014 incidents other than the Intake Search Area incident.

### B.

The defendants move for summary judgment with respect to the plaintiff's excessive force claim from April 16, 2014. The plaintiff claims that Officer Perez and other unnamed officers beat him before he was taken to a psychiatrist. However, on April 16, Captain Garel referred the plaintiff to the

---

[2] The plaintiff speculates that Officer Perez might have been one of the officers who allegedly attempted to sodomize him in the clinic. However, the officers were all wearing helmets, and thus the plaintiff was unable to describe any of the officers at his deposition. See Defs.' 56.1 Stmt. ¶ 130. The plaintiff's speculation about Officer Perez is insufficient to create a dispute of material fact when countered by the reported list of officers who were involved in the alleged incident, none of whom are defendants. See Ying Jing Gan, 996 F.2d at 532.

psychiatrist for mental health concerns, and there was no referral for any sort of physical injuries. Moreover, the psychiatrist's report does not mention any physical injuries, which the plaintiff claims were substantial and widespread. Instead, despite being given the opportunity to "vent his concerns," Defs.' 56.1 Stmt. ¶ 48, the plaintiff complained only about depression and a lack of will to live. The plaintiff's "inconsistent and self-serving testimony" should not be credited at summary judgment when "directly contradicted by the medical evidence." Allah v. Wilson, No. 13cv4269, 2017 WL 4350611, at *3 (S.D.N.Y. July 31, 2017), appeal dismissed, No. 17-2727, 2018 WL 4489086 (2d Cir. Jan. 2, 2018), cert. denied, 139 S. Ct. 569 (2018).

Moreover, no other evidence in the record supports the plaintiff's version of events on April 16, 2014. The DOC 24 Hour Report from that day, which catalogues all uses of force by officers and inmates, does not mention the plaintiff or Officer Perez. Nor did the plaintiff report the alleged excessive use of force to anyone. Given the strength of the record, the plaintiff's mere conclusory allegations are insufficient to create a dispute of material fact, especially given that he admits that he cannot remember exactly what happened that day. See Jeffreys v. City of New York, 426 F.3d 549, 555 (2d Cir. 2005); Williams v. Shaaban, No. 16cv8439, 2019 WL 1438048, at *2

14

(S.D.N.Y. Mar. 29, 2019) ("[A] pro se party's bald assertion, completely unsupported by evidence is not sufficient to overcome a motion for summary judgment." (quotation marks omitted)). Therefore, the defendants' motion for summary judgment dismissing the plaintiff's excessive force claim relating to the April 16, 2014 incident is **granted.**

C.

The defendants move for summary judgment dismissing the plaintiff's excessive force claims relating to the April 17, 2014 Intake Search Area incident. They argue that any use of force was objectively reasonable in response to the threats the plaintiff posed and thus there was no constitutional violation, and that in any event they are entitled to qualified immunity.

1.

Because the plaintiff was a state pretrial detainee at the time of his incident, his claims of excessive force are analyzed under the Due Process Clause of the Fourteenth Amendment. Darnell v. Pineiro, 849 F.3d 17, 21 n.3 (2d Cir. 2017). To be liable for a deprivation of the plaintiff's Fourteenth Amendment due process rights, the defendants must have acted purposefully or knowingly, "or possibly" recklessly. Kingsley v. Hendrickson, 135 S. Ct. 2466, 2472 (2015). However, "negligently inflicted harm is categorically beneath the threshold of constitutional due process." Id. (quotation marks and emphasis omitted).

In determining whether the force used was "excessive," courts apply a standard of objective reasonableness. Id. at 2472-73. An action is objectively reasonable when it is "rationally related to a legitimate governmental objective." Edrei v. Macquire, 892 F.3d 525, 536 (2d Cir. 2018) (citing Kingsley, 135 S. Ct. at 2473). An action is objectively unreasonable when it "can properly be characterized as arbitrary, or conscience shocking, in a constitutional sense." Id. (quoting City of Sacramento v. Lewis, 523 U.S. 833, 847 (1998)). "[P]urposeful, knowing or (perhaps) reckless action that uses an objectively unreasonable degree of force is conscience shocking." Id. (emphasis removed); see also Vargas v. N.Y.C. Dep't of Corrs., No. 17cv2544, 2018 WL 3392873, at *2 (S.D.N.Y. July 12, 2018).

The defendants' use of force during the Intake Search Area incident was objectively reasonable because it was proportionate to the plaintiff's resistance. The plaintiff refused to comply with orders to remove his clothing in the Intake Search Area,[3] which was a legitimate command. See Israel v. City of New York, No. 11cv7726, 2012 WL 4762082, at *3-4 (S.D.N.Y. Oct. 5, 2012)

---

[3]     See Carmona v. City of New York, No. 13cv3273, 2016 WL 4401179, at *3 (S.D.N.Y. Mar. 1, 2016) (noting that "[o]bvious security concerns arise" when an unsecured inmate refuses to obey orders); see Ramos v. Hicks, No. 87cv2272, 1988 WL 80176, at *2 (S.D.N.Y. July 25, 1988) (Sand, J.) (finding a justified use of force when plaintiff became upset and refused to comply with a defendant officer's direct orders).

(discussing the constitutional latitude the DOC receives in strip searching inmates).

The plaintiff presented an additional security risk when he physically resisted the officers. In such situations, officers have a legitimate governmental objective to quell security risks. See Kingsley, 135 S. Ct. at 2473 (stating that courts must "account for the legitimate interests that stem from [the government's] need to manage the facility in which the individual is detained, appropriately deferring to policies and practices that in th[e] judgment of jail officials are needed to preserve internal order and discipline and to maintain institutional security" (quotation marks omitted, alterations in original)). In this case, the force the defendant officers employed upon the plaintiff -- punching and using one burst of mace -- was reasonable given the security concerns that the plaintiff's conduct raised. See Jones v. Diaz, No. 09cv2625, 2011 WL 1202024, at *4 (S.D.N.Y. Mar. 23, 2011) (single spray of a chemical agent was not unreasonable force); DeArmas v. Jaycox, No. 92cv6139, 1993 WL 37501, at *4 (S.D.N.Y. Feb. 8, 1993) (punching an inmate in the arm and kicking the inmate in the leg was not unreasonable force), aff'd, 14 F.3d 591 (2d Cir. 1993). Indeed, following the Intake Search Area incident, the plaintiff pleaded guilty to assaulting several of the defendant officers, substantiating the threat he posed to the officers.

The security video further undermines the plaintiff's claim that the defendants used excessive force. "When the parties disagree as to the existence of a genuine dispute of a material fact, the Court may consult incontrovertible video evidence to determine whether summary judgment is nevertheless appropriate." Wiles v. City of New York, No. 13cv2898, 2016 WL 6238609, at *3 (S.D.N.Y. Oct. 25, 2016), aff'd, 724 F. App'x 52 (2d Cir. 2018); see also Scott v. Harris, 550 U.S. 372, 378-81 (2007). Although parts of the incident are obscured from view, the video footage shows the plaintiff continually resisting the officers. It also illustrates that as a result of the struggle to subdue the plaintiff, Officer Wong suffered substantial injuries to his arm and his neck and head area to the point that he was immobile, and eventually had to be taken away on a gurney with his neck in a brace and his arm in a sling.

Finally, subsequent documentation of the plaintiff's injuries suggests that the defendants' use of force in the Intake Search Area was objectively reasonable. Medical records – including x-rays – and photographs of the plaintiff from the same day as the Intake Search Area incident show that the plaintiff received relatively minor injuries, which were limited to sprains or strains, avulsions, and abrasions. Defs.' 56.1 ¶¶ 124-27; Rosenkilde Decl. Ex. O; see Rodriguez v. City of New York, 802 F. Supp. 2d 477, 481 (S.D.N.Y. 2011) (finding that the

plaintiff's excessive force claim was belied by photographs and an undisputed medical record).

Because the defendant officers' use of force does not "shock[] the conscious" and was objectively reasonable, the plaintiff did not suffer a constitutional violation. See Edrei, 892 F.3d at 536.

**2.**

In any event, the defendant officers are entitled to qualified immunity. Qualified immunity protects government officials performing discretionary functions, such as arrests, "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); see also Plumhoff v. Rickard, 572 U.S. 765, 778-79 (2014); Iqbal, 556 U.S. at 672; Malley v. Briggs, 475 U.S. 335, 341 (1986) ("As the qualified immunity defense has evolved, it provides ample protection to all but the plainly incompetent or those who knowingly violate the law."). "Requiring the alleged violation of law to be clearly established balances the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." Wood v. Moss, 572 U.S. 744, 758 (2014) (citation and quotation marks omitted). As

the Supreme Court has explained, "[t]he relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Saucier v. Katz, 533 U.S. 194, 202 (2001) (citation omitted), overruled on other grounds by Pearson v. Callahan, 555 U.S. 223 (2009); see also McKay v. City of New York, 32 F. Supp. 3d 499, 506 (S.D.N.Y. 2014).

As explained above, the defendant officers' use of force was objectively reasonable in light of clearly established law. Therefore, they are entitled to qualified immunity from the plaintiff's claims. See Munafo v. Metro. Transp. Auth., 285 F.3d 201, 210 (2d Cir. 2002).

The defendants' motion for summary judgment dismissing the plaintiff's excessive force claim relating to the April 17, 2014 Intake Search Area incident is **granted.**

### D.

Finally, the plaintiff claims that the defendants denied him medical care following the alleged uses of force on all three relevant days. However, reports show that medical professionals treated the plaintiff on both April 16 and 17, 2014, and that he was evaluated on June 9, 2014 but had no injuries.

On April 16, 2014, Captain Garel documented the plaintiff's psychological problems and escorted him to the psychiatrist for treatment. There is no mention of injuries in the psychiatrist's report despite plaintiff's allegation that he had severe injuries, and despite the plaintiff's opportunity to relay any concerns to the psychiatrist. Moreover, the plaintiff concedes that he was immediately taken to the clinic on April 17, 2014, after the Intake Search Area incident, where Dr. Barnes diagnosed and treated him and ordered x-rays. See Estevez v. City of New York, No. 16cv073, 2017 WL 1167379, at *5 (S.D.N.Y. Mar. 28, 2017) (holding that a plaintiff's claims of inadequate medical care should be dismissed after finding that doctors "promptly treated" the plaintiff by ordering x-rays and by prescribing medication). Finally, on June 9, 2014, the Injury to Inmate Report stated that the plaintiff did not complain of any injuries and none were visible. See Andrew v. Bellevue Hosp., No. 13cv8531, 2016 WL 7009018, at *3 (S.D.N.Y. Nov. 30, 2016) (noting that, to succeed on a failure to provide medical care claim, the plaintiff must show that an official "kn[ew] of and disregard[ed] an excessive risk to inmate health or safety." (alterations in Andrew, quoting Farmer v. Brennan, 511 U.S. 825, 837 (1994))).

These medical reports counter the plaintiff's conclusory allegations that the defendants failed to provide him with

medical care such that no reasonable jury could find in the plaintiff's favor. Therefore, the defendants' motion for summary judgment dismissing the plaintiff's failure to provide medical care claims is **granted.**

**CONCLUSION**

The Court has considered all the arguments of the parties. To the extent not specifically addressed above, the arguments are either moot or without merit. For the foregoing reasons, the defendants' motion for summary judgment is **granted.**

The Clerk is directed to enter judgment dismissing the case. The Clerk is also directed to close all pending motions and to close this case.

**SO ORDERED.**

**Dated:**    **New York, New York**
           **September 17, 2019**

                            **John G. Koeltl**
                    **United States District Judge**